Raul TAMEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–05–00142–CR.

Court of Appeals of Texas, Tyler.

Sept. 6, 2006.

Clemmie Wickware, for relator.

Bascom W. Bentley III, for respondent.

Panel consisted of WORTHEN, C.J., GRIFFITH, J. and HOYLE, J.

## OPINION

BRIAN HOYLE, Justice.

Raul Tamez appeals his conviction for the offense of murder. Appellant raises nine issues for our consideration. We affirm.

### BACKGROUND

William Cathey and Appellant were both inmates at the Coffield Unit of the Texas Department of Criminal Justice. Appellant had been convicted of burglary and, once imprisoned, had been convicted of possession of a deadly weapon within a penal facility. Cathey had been convicted of murder. The two men were housed in single occupancy cells in a maximum security portion of the prison. On October 7, 2002, both men were allowed recreation. They were taken separately to adjoining recreation rooms. After about ten minutes, Appellant told the guard that he needed to use the restroom. This meant that he would be escorted back to his cell and would forfeit the remainder of his recreation time. Offenders in this part of

the prison are handcuffed when they are transported, and Appellant was handcuffed and taken back to the cell block.

There had been words between Appellant and William Cathey. Accounts varied, but when interviewed after the assault, Appellant said that Cathey had identified him as a member of the Mexican Mafia, a prison gang. Because he was not a member of the Mexican Mafia—Appellant was a member of the Latin Kings—this would place Appellant in danger if the actual Mexican Mafia members learned that he was claiming membership. Appellant also said that he had shared commissary items with Cathey, but that Cathey began to threaten him when he indicated that he would not share items any longer.

Appellant was escorted back to the cell block and placed in Cathey's cell. The parties agree that this happened due to the negligence of the officer on duty, but there was disagreement as to how it occurred. The State postulated that Appellant had identified Cathey's cell as his own to the inexperienced officer escorting him back from recreation. Appellant testified that he was not paying attention and the officer simply made a mistake and placed him in the wrong cell. Appellant testified that he did not notice he was in the wrong cell for some time because it was dark and because the cell was arranged in a manner similar to his own cell.

Cathey was brought back to his cell, handcuffed behind his back, almost an hour later. Cathey noticed that Appellant was in his cell, and he alerted the guard to that fact. The guard, who could not be located at the time of trial, either did not pay attention to Cathey or did not believe him. She asked the picket officer to open the door to the cell. When the door opened, Cathey began to run away. Appellant ran out of the cell and after Cathey. Appellant had the motor from a box fan wrapped in a sock in his hand. He caught up to Cathey and beat him with the improvised weapon. Inmates who witnessed the assault testified that Appellant hit Cathey in the head between six and twelve times with the device. One inmate testified that Appellant turned Cathey over after the man had fallen and hit him in the face several more times. Cathey suffered extensive injuries. Specifically, his skull was fractured in several places, one of his eyes was ruptured, and the bones of his face and nose were broken.

Appellant laid down after the assault and was returned to custody. Cathey was taken to the infirmary. The authorities attempted to arrange to fly Cathey to Tyler by helicopter, but the weather was too bad to allow a flight. Instead, Cathey was driven by ambulance to a hospital in Palestine. The personnel there attempted to treat Cathey, but the decision was made to transfer him, again by ambulance, to a hospital in Tyler that had more capabilities. After Cathey arrived at the hospital in Tyler, a tube was inserted into his throat so that he could be connected to a mechanical ventilator. During this process, he aspirated some of the contents of his stomach into his lungs. The doctors tried to clean the stomach contents from his lungs on two occasions. Cathey suffered a cardiac arrest that night. The medical staff was able to resuscitate him, and he was moved into the intensive care unit for observation.

Cathey's condition worsened, and his family made the decision to remove him from life support two days after his admission to the hospital. Cathey died shortly thereafter. The medical examiner who conducted an autopsy concluded that Cathey died of complications from blunt trauma to the head. Appellant presented the testimony of an expert witness who testified that the injuries to Cathey's head were not

sufficient to kill him. Appellant's expert witness concluded that Cathey died as a result of the attempt to intubate him. He testified that intubation was unnecessary and that it had been negligently performed, allowing the aspiration of the contents of his stomach. Appellant's expert witness testified that the aspiration of the stomach contents induced a chemical pneumonia, which caused Cathey's death.

Appellant testified that he was frightened of Cathey, and that he had not intentionally hit him but merely swung the improvised weapon to ward off the handcuffed Cathey. He testified that the weapon was already fabricated when he was placed in Cathey's cell and that he was afraid he would be trapped in the cell with Cathey.

The jury found Appellant guilty of murder and assessed punishment at life imprisonment. This appeal followed.

### EXCUSAL OF JURORS

In his first issue, Appellant complains that the trial court improperly excused jurors for cause on its own motion.

### Applicable Law

In a criminal case the parties, and not the trial court, make motions to excuse jurors for cause. TEX.CODE CRIM. PROC. ANN. art. 35.16(a) (Vernon Supp.2006); Green v. State, 764 S.W.2d 242, 246 (Tex. Crim.App.1989). The trial court is charged with disqualifying and excusing jurors who have a theft or a felony conviction, are under indictment or legal accusation for theft or a felony, or are insane. TEX.CODE CRIM. PROC. ANN. art. 35.19 (Vernon Supp.2006); TEX.CODE CRIM. PROC. ANN. art. 35.16(a)(2–4). Furthermore, the trial court has discretion to excuse otherwise

qualified jurors upon a showing of good cause. TEX.CODE CRIM. PROC. ANN. art. 35.03 (Vernon Supp.2006); Crutsinger v. State, 2006 WL 1235168, at *1, 2006 Tex. Crim.App. LEXIS 924, at *2–3 (Tex.Crim. App. May 10, 2006) (not yet released for publication); Butler v. State, 830 S.W.2d 125, 132 (Tex.Crim.App.1992).

### Analysis

■ In this case, the trial court excused jurors for cause on its own motion. The reasons were proper reasons to challenge jurors for cause—inability to consider the range of punishment or an unwillingness to follow the law. But, as Appellant points out, trial courts may not make challenges for cause.[1] However, this type of complaint must be preserved before it may be considered on appeal. See Green, 764 S.W.2d at 247. In Green, the court of criminal appeals identified a four part test to determine whether a party has preserved error and has been harmed by the sua sponte dismissal of a juror. Id. That test requires that the defendant object to the excusal of the juror, object to the assembled jury, identify the jurors he claims were improperly excused, and exhaust his peremptory challenges and request additional challenges. Id.

Over what took fifteen pages to record, the attorneys and the trial court worked together to determine who should be struck or dismissed. While the court did state that it was striking jurors for cause, it was merely working with two experienced attorneys to shortcut the process of excusing and removing jurors. All of Appellant's counsel's requests to challenge jurors were granted, counsel opposed none of the challenges to jurors, and counsel affirmatively failed to object to the assembled petit jury. This complaint is not pre-

---

1. One juror was struck because she was pregnant and very far along in her pregnancy. This would appear to be an excuse rather than a challenge for cause. Appellant does not contest the release of that juror.

served for our consideration. *See Cooks v. State,* 844 S.W.2d 697, 718 (Tex.Crim.App. 1992). We overrule Appellant's first issue.

### ADMISSION OF EVIDENCE

In his second issue, Appellant complains that the trial court erred when it allowed the State to impeach Appellant's testimony with evidence that he had been previously convicted of the offense of possession of a deadly weapon in a penal institution.

### *Applicable Law*

■ Texas Rule of Evidence 609 provides that a witness may be impeached by evidence that he had previously been convicted of a felony if the trial court determines that the probative value of admitting the evidence outweighs its prejudicial effect. This determination is reviewed for an abuse of discretion. *Theus v. State,* 845 S.W.2d 874, 881 (Tex.Crim.App.1992); *Green v. State,* 55 S.W.3d 633, 645 (Tex. App.-Tyler 2001, pet. ref'd).

■ In *Theus,* the court of criminal appeals articulated a five factor analysis to evaluate the admission of a prior felony. *Theus,* 845 S.W.2d at 880. The five factors are 1) the impeachment value of the prior crime, 2) the temporal proximity of the past crime relative to the charged offense and the witness's subsequent history, 3) the similarity between the past crime and the offense being prosecuted, 4) the importance of the defendant's testimony, and 5) the importance of the credibility issue. *Id.*

### *Analysis*

■ The State asserts that the first factor, the impeachment value, weighs in favor of admission because crimes committed within a penal institution involve deception, and the court in *Theus* recognized that offenses that involve deception have a higher impeachment value. *Id.* at 881. This assertion is made without citation to authority and is not immediately persuasive. We understand the argument that it is generally not possible for an inmate to obtain a weapon without engaging in deception and therefore the offense bears more of a deceptive cast than it might if the crime were committed in the free world. But it is not deceptive in the same way that an offense of impersonating an officer or passing a forged bank note is deceptive. The root of the offense is not dishonesty, and so we weigh this factor neutrally.

The second factor pertains to the relationship in time between the prior conviction and the present offense. The prior conviction in this case came about seven years before the trial. It was neither perfectly fresh nor was it ancient. We weigh this factor neutrally.

The third factor is the similarity of the prior conviction and the present offense and weighs against admission, if slightly. No facts about the prior conviction were admitted, but a reasonable jury might conclude that Appellant's prior conviction involved the use rather than the mere possession of a deadly weapon. On the other hand, there is no evidence that it did, and there was no improper suggestion that an inference should be drawn from the prior conviction about Appellant's propensity for violence. There is a tension because the present case involves a deadly weapon and Appellant has been previously convicted of possession of a deadly weapon. The trial court recognized this and included it in its weighing of the factors.

The fifth and sixth factors, the importance of Appellant's testimony and the importance of his credibility, weigh in favor of admission. Appellant's testimony was very important as was his credibility. It is true, as Appellant suggests, that some parts of his testimony were corroborated. Specifically, other inmates testified as to

difficulties between Appellant and Cathey. But Appellant was the only person who testified that Cathey had threatened him and tried to kick open the barrier between their respective recreation rooms immediately before the assault. Furthermore, Appellant was the only source of evidence for the proposition that he feared Cathey would assault him or that he had merely sought to ward off Cathey and not deliver devastating blows to his head. Appellant's testimony, if believed, could have resulted in his acquittal. No other evidence established his self defense claim or his claimed lack of intent.[2]

Therefore, Appellant's testimony and his credibility were very important and so these factors weigh in favor of admission.

Essentially the balance in this issue was between the possibility of an improper inference being drawn from Appellant's previous felony conviction for possessing a deadly weapon in prison and the importance of Appellant's credibility. Because the defense relied on facts and statements of intent that were not addressed by other evidence, Appellant's testimony and his credibility were very important. Therefore, the trial court's decision to allow Appellant to be impeached with evidence of his prior felony conviction is not outside a zone of reasonable disagreement. *See Theus*, 845 S.W.2d at 881. We overrule Appellant's second issue.

### NOTICE OF EXPERT TESTIMONY

In his third issue, Appellant complains that the State failed to give appropriate notice of anticipated expert witnesses and that the trial court should have excluded the testimony of four of the State's witnesses.

*Analysis*

■ A portion of this complaint is waived. Appellant complains that witness Bill Jones testified that the fan motor used to assault Cathey was a deadly weapon. Jones was an investigator with the prison system. This might be expert testimony, but Appellant did not object to the testimony when it was offered. Appellant raised the issue prior to trial, but the trial court indicated that it would not rule until the issue was before it. Appellant did not object to Jones's testimony, or to the trial court's decision to defer a ruling until the evidence was offered, and has waived this complaint. *See* TEX.R.APP. P. 33.1(a)(1)(A), (a)(2)(B); *Martinez v. State*, 22 S.W.3d 504, 507 (Tex.Crim.App.2000). Similarly, Appellant did not object to the expert testimony offered by Drs. Veasey and Villereal. This waives Appellant's complaint about their testimony. *Id.*

Appellant did object to expert testimony from Eddie Baker, an assistant warden. On appeal, Appellant asserts that article 39.14(b) of the Texas Code of Criminal Procedure requires the State to disclose, prior to trial, the name and address of any expert witness it intends to call. But, as the State points out, the statute is not self-executing. Rather, article 39.14(b) allows the trial court to require the State to list their expert witnesses upon request. The record does not show that the court ever ordered disclosure, and Appellant does not direct us to any place in the record where such an order was made.

In a pleading filed immediately before trial, however, Appellant said that the trial court had entered such a discovery order in a previous cause number in which this matter had been indicted. This does not mean that the requirement carried over to

---

**2.** One of the inmates called by Appellant testified that Cathey had a piece of glass in his hand before Appellant hit him. Appellant did not testify that he saw the piece of glass and no piece of glass was recovered.

the instant case. In fact, that Appellant could only cite an order from a previously filed and presumably dismissed case suggests that there was not such an order in this case. Without such an order, the complaint would not be preserved. *See, e.g., Gorom v. State,* No. 13–03–249–CR, 2005 Tex.App. LEXIS 3007, at *7 (Tex. App.-Corpus Christi 2005, no pet.) (not designated for publication) (holding that article 39.14(b) had no application when the trial court did not order disclosure.).

■■ Even if the court had ordered the State to disclose its expert witnesses, we perceive no reversible error. First, Appellant sought the wrong remedy. The appropriate remedy for a discovery violation is to request a continuance. *Duff–Smith v. State,* 685 S.W.2d 26, 33 (Tex. Crim.App.1985). This was not done.

Second, there was notice that Baker was an expert witness. Appellant complains that because the State designated every witness as a potential expert witness, he may have had actual notice of an expert witness but not realistic notice because of the number of witnesses. This argument fails with respect to Baker in particular. Appellant should have reasonably anticipated that an assistant warden who observed both the weapon and the victim shortly after the assault would testify that the fan motor was a deadly weapon.

Third, the matter to which Baker testified, that the fan motor in a sock was a deadly weapon, is not the kind of expert testimony, assuming it is expert testimony at all, for which Appellant had need of exceptional formal notice. The weapon was admitted into evidence and another witness testified that it was a deadly weapon. The weapon was used to hit Cathey in the head and face and fractured his skull in at least two places. The theory that the fan motor was a deadly weapon was not a novel argument nor was it unexpected.

Indeed, the State alleged it in the indictment.

Appellant was not without actual notice that Baker would be an expert witness because he was designated as a potential expert witness in the pretrial pleadings. Appellant was not without realistic notice, assuming such a claim is cognizable, because he could have reasonably anticipated that a correctional professional would testify that, as alleged in the indictment, the fan motor was a deadly weapon.

Even if Baker had not been disclosed at all, we would review the decision to allow him to testify in terms of whether the prosecutor acted in bad faith and whether Appellant could have reasonably anticipated the testimony. *Martinez v. State,* 867 S.W.2d 30, 39 (Tex.Crim.App.1993). This testimony could have reasonably been anticipated, and the State did not act in bad faith when it listed all of its witnesses, including Baker, as possible expert witnesses. We overrule Appellant's third issue.

### SUFFICIENCY OF THE EVIDENCE

In his fourth and fifth issues, Appellant complains that the evidence was insufficient to show that he caused Cathey's death.

### Standards of Review

■■ The due process guarantee of the Fourteenth Amendment requires that a criminal conviction be supported by legally sufficient evidence. *See Jackson v. Virginia,* 443 U.S. 307, 315–16, 99 S.Ct. 2781, 2786–87, 61 L.Ed.2d 560 (1979); *Ross v. State,* 133 S.W.3d 618, 620 (Tex.Crim.App. 2004); *Willis v. State,* 192 S.W.3d 585, 592 (Tex.App.-Tyler 2006, pet. ref'd). Evidence is not legally sufficient if, when viewing the evidence in a light most favorable to the verdict, no rational trier of fact could have found the essential elements of

the offense beyond a reasonable doubt. *See Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789; *see also Johnson v. State,* 871 S.W.2d 183, 186 (Tex.Crim.App.1993).

■ While legal sufficiency review is all that is required by the U.S. Constitution, the Texas Court of Criminal Appeals has determined that the Texas Constitution requires further review of the factual sufficiency of the evidence. *Clewis v. State,* 922 S.W.2d 126, 129–31 (Tex.Crim. App.1996). Our review of the factual sufficiency of the evidence is without the light most favorable to the verdict, and we determine whether the evidence supporting the verdict is too weak to support the finding of guilt beyond a reasonable doubt, or if the evidence contrary to the verdict is strong enough that the beyond a reasonable doubt standard could not have been met. *Zuniga v. State,* 144 S.W.3d 477, 484 (Tex.Crim.App.2004).

■ Under either standard, our role is that of appellate review, and the fact finder is the sole judge of the weight and credibility of a witness's testimony. *Wesbrook v. State,* 29 S.W.3d 103, 111–12 (Tex. Crim.App.2000). The fact finder may choose to believe all, some, or none of a witness's testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986).

■ The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim.App.1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

To support the conviction in this case, the State was required to prove that Appellant caused the death of William Cathey by committing an act clearly dangerous to human life with the intent to cause serious bodily injury to William Cathey. *See* TEX. PEN.CODE ANN. § 19.02(b)(2) (Vernon Supp. 2006).

## Analysis

■ Appellant argues that he is not criminally responsible for William Cathey's death because there was a concurrent cause, the alleged negligence of the hospital staff, that caused the death. Texas law provides that a person is not responsible for the result of an action if a concurrent cause was clearly sufficient to produce the result, and the actor's conduct was clearly insufficient to cause the result. TEX. PEN. CODE ANN. § 6.04(a) (Vernon Supp.2006).

Appellant presented expert testimony that the fractured skull and broken facial bones that Cathey suffered would not have caused his death, but that he died from chemical pneumonia which was a result of his aspirating stomach contents while he was being intubated. This expert, whose principal practice was in the area of obstetrics/gynecology, also testified that there was no reason for the hospital staff to intubate Cathey at all and that the aspiration occurred as a result of negligence.

The medical examiner and treating emergency department physician testified differently. The medical examiner testified that while there were food particles in Cathey's lungs, the broken skull and other injuries Cathey suffered at Appellant's hands were the cause of his death. Furthermore, there was testimony that the natural reflex that keeps a person from aspirating stomach contents when he vomits is limited in people, such as Cathey, who are suffering from a lack of consciousness caused by a brain injury. In fact, the emergency department doctor testified

that it was Cathey's dwindling consciousness that required intubation to ensure that Cathey could be supplied with sufficient oxygen.

In cases involving pneumonia contracted in the hospital after significant injuries, the court of criminal appeals has held that the actor who inflicted the injury will be responsible for the death in the absence of gross neglect or improper treatment. *Jones v. State*, 582 S.W.2d 129, 134 (Tex. Crim.App.1979); *Turner v. State*, 505 S.W.2d 558, 560 (Tex.Crim.App.1974); *see also Powell v. State*, 13 Tex. App. 244, 254 (1882) ("It is an ancient and well settled principle of the law of homicide, that, if a wound causes a disease which produces death, the death is imputable to the wound.").

This case is different from *Jones* because the expert testimony offered by Appellant, if believed, suggested that the intubation was unnecessary, that the intubation was negligently performed, and that death would not have occurred without the subsequent chemical pneumonia. If the death was the result of medical malpractice and Cathey would not have died as a result of the injuries inflicted on him by Appellant, Appellant would not be responsible for the death. The jury's verdict, however, was a rejection of the testimony offered by Appellant's expert witness. The treating physician testified about the reasons that intubation was necessary, and there was testimony to describe how the aspiration could have occurred in the absence of negligence. Finally, the medical examiner testified that the serious wounds inflicted by Appellant were the cause of death.

The jury's conclusion that Appellant had criminal responsibility for Cathey's death is a reasonable conclusion between contradicting testimony offered by expert witnesses. A rational jury could have concluded that Appellant caused Cathey's death, that there was not another cause sufficient to cause the death, or that Appellant's conduct was clearly the cause of Cathey's death. Evaluating the evidence in a neutral light, we hold that the evidence is not too weak to support the verdict, nor is it outweighed by contrary evidence. We overrule Appellant's fourth and fifth issues.

### ADMISSION OF EVIDENCE—GANG AFFILIATION

■ In his sixth issue, Appellant complains that the trial court erred when it allowed evidence that Appellant was a member of a gang during the guilt/innocence phase of the trial. Specifically, Appellant complains that his written statement that he was a member of a prison gang was not relevant and that he was not provided timely notice of the intent to offer the evidence.

In fact, Appellant's statement does not say that he was a member of a prison gang. Appellant's statement was, in relevant part, as follows:

> I started having problem [sic] with said individual because one [sic] he put out over the run that I was confirmed Mexican Mafia and the M.M. who live on the wing (2–row) could hear him. He was saying this in order to cause confussion [sic] between me [and] that familia.

This is not evidence that Appellant was a member of the "Mexican Mafia." It was evidence that he was not a member of the "Mexican Mafia" and that Cathey was saying this to cause Appellant trouble.

Furthermore, this complaint is not preserved. A hearing was held outside the presence of the jury about the statement. Appellant's counsel did not request that the "Mexican Mafia" language be removed from the statement, but expressed concern that the statement would open the door to evidence about Appellant's actual member-

ship in a prison gang. The court indicated that the statement would not open the door and asked if either party wished to have the statement redacted. The State indicated that it did not, and Appellant's counsel said, "I'm—I'm—I'm not necessarily [asking for redaction] either, but I wanted just to point out to the court that it gets into things in the limine, but it was in the statement." Shortly thereafter, the court asked Appellant's counsel twice more for further objections and there were none. When the exhibit was finally offered, Appellant's counsel stated as follows: "Your Honor, this was made available to the defense beforehand. We have no objection." Appellant never complained that timely notice was not given or that the evidence was irrelevant.

Generally, a complaint about the introduction of evidence is not preserved for our review unless there has been an objection at the time the evidence was admitted. *See* Tex.R.App. P. 33.1. Furthermore, even when there is an objection to evidence before trial, the statement that there is "no objection" when it is introduced waives any previous objection. *See Swain v. State*, 181 S.W.3d 359, 368 (Tex.Crim.App. 2005), *petition for cert. filed,* (April 25, 2006) (No. 05–11514, 2006 WL 1666125). In this case, both types of waiver are present. There was never an objection to the statement, and Appellant's counsel affirmatively stated that she did not object to the evidence when it was admitted. It appears that the trial court, in an abundance of caution, was prepared to order the statement to be redacted. Appellant declined to request that the statement be redacted and may not take the contrary position on appeal. We overrule Appellant's sixth issue.

### Admission of Evidence—Expert Testimony Regarding Deadly Weapon

In his seventh issue, Appellant complains that the trial court erred when it permitted Eddie Baker to testify that the fan motor wrapped in a sock was a deadly weapon.

### Standard of Review

We review a trial court's decision to admit or exclude scientific expert testimony under an abuse of discretion standard. *See Sexton v. State*, 93 S.W.3d 96, 99 (Tex.Crim.App.2002). The trial court ruling will be upheld if it is within the zone of reasonable disagreement. *Id.* By rule, a witness may offer an opinion if he possesses specialized knowledge, skill, experience, training, or education related to a fact in issue. Tex.R. Evid. 702. A lay witness may offer opinions based on his perception when it is helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. Tex.R. Evid. 701. We review a trial court's decision to allow opinion testimony from a lay witness for an abuse of discretion. *See Fairow v. State*, 943 S.W.2d 895, 901 (Tex.Crim.App.1997).

A deadly weapon is a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. Tex. Pen.Code Ann. § 1.07(a)(17)(A) & (B) (Vernon Supp.2006).

### Analysis

Eddie Baker was an assistant warden at the time of trial and had been a major at the Coffield Unit at the time of the assault. He arrived at the scene of the assault shortly after it occurred and observed both the weapon and the injuries to Cathey. Baker had been with the department of criminal justice for more than sixteen years and had seen inmates assault guards and other inmates with homemade or improvised weapons seventy-five times.

Baker testified that the fan motor in the sock was a deadly weapon.

 At the outset, we should note that it is not immediately apparent that this testimony was expert testimony. For example, the court of criminal appeals held in *Denham v. State*, 574 S.W.2d 129, 131 (Tex.Crim.App.1978), that a lay witness who observed a knife and received a wound from it was capable of testifying that the knife was a deadly weapon. In this case, Baker observed the weapon and the injuries it was used to inflict. Photographs of the injuries taken shortly after they were inflicted were admitted into evidence, and it is not clear to us that Baker's opinion rested on his credentials. Assuming Baker is an expert, the test for whether his testimony should have been allowed is whether 1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; 2) the subject matter of the testimony is an appropriate one for expert testimony; and 3) admitting the expert testimony will actually assist the fact finder in deciding the case. *Alvarado v. State*, 912 S.W.2d 199, 215–16 (Tex.Crim.App.1995).

Baker was qualified as an expert by virtue of his knowledge and experience in the prison system. He was a corrections professional who had observed the use of improvised weapons in prisons. He observed the weapon in this case and the injuries inflicted with it. His training and experience were related to the issue at hand, specifically, weapons improvised within the prison system. And his testimony was helpful to the jury as they were called upon to decide if the fan motor was a deadly weapon. The trial court did not abuse its discretion when it allowed Baker to offer an opinion as to whether the fan motor was a deadly weapon. *See, e.g., Bernal v. State*, B14–91–00044–CR, 1992 WL 45794, at *1, 1992 Tex.App. LEXIS

681, at *2–4 (Tex.App.-Houston [14th Dist.] 1992, no pet.) (not designated for publication) (assistant warden was properly qualified to testify as an expert witness that a "shank" was a deadly weapon because of his experience in the prison system and his training.). We overrule Appellant's seventh issue.

### UNANIMOUS VERDICT

In his eighth issue, Appellant complains that he was deprived of his right to a unanimous verdict because the jury charge defined a deadly weapon in the disjunctive and the jury may have reached its verdict without unanimous agreement as to which definition of deadly weapon applied.

### *Applicable Law*

 Texas law requires a unanimous jury verdict in criminal cases. TEX. CONST. art. V, § 13; TEX.CODE CRIM. PROC. ANN. art. 36.29(a) (Vernon Supp.2006); *Ngo v. State*, 175 S.W.3d 738, 745 (Tex.Crim.App. 2005). When the state charges different criminal acts, regardless of whether those acts constitute violations of the same or different statutory provisions, the jury must be instructed that it cannot return a guilty verdict unless it unanimously agrees upon the commission of any one of the criminal acts. *Francis v. State*, 36 S.W.3d 121, 125 (Tex.Crim.App.2000). This requirement applies to the elements of an offense, and the jury need not agree on all the "underlying brute facts [that] make up a particular element." *Richardson v. United States*, 526 U.S. 813, 817, 119 S.Ct. 1707, 1710, 143 L.Ed.2d 985 (1999).

### *Analysis*

 The jury was instructed that a deadly weapon is anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is capable of causing death

or serious bodily injury.[3] The jury was further instructed that it could find Appellant guilty of murder if it found that he caused Cathey's death when he committed an act clearly dangerous to human life by striking him with a deadly weapon, the piece of a motor, with the intent to cause serious bodily injury. The jury was not told that they had to agree on at least one of the parts of the definition of a deadly weapon. Therefore, looking at the deadly weapon instruction alone, it is hypothetically possible that some of the jurors could have concluded that the fan motor was manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury (definition subpart 1), and some of the jurors could have concluded that the fan motor was used or intended to be used to cause death or serious bodily injury (definition subpart 2).

This is not a straightforward *Ngo* error. A *Ngo* error is present when the jury is permitted to find a defendant guilty without agreeing on the same essential elements of the offense. *Ngo*, 175 S.W.3d at 749–49. The deadly weapon allegation is not an essential element of the offense of murder. *See* Tex. Pen.Code Ann. § 19.02(b)(2). Therefore, there is no potential for a lack of jury unanimity on an element of the offense. *Ngo*, 175 S.W.3d at 747.

■ To obtain a deadly weapon finding, the State must prove beyond a reasonable doubt that Appellant used or exhibited a deadly weapon. *Hill v. State*, 913 S.W.2d 581, 583 (Tex.Crim.App.1996). It is not clear that a jury must agree on which definition of deadly weapon applies in a given case. Our research does not reveal a previous case in Texas dealing with this precise issue, and Appellant merely directs us to a single unpublished

decision that restates the requirement of juror unanimity with respect to elements of an offense. However, we need not decide the issue to resolve this matter.

■ As was done in this case, a deadly weapon finding can be made when the jury finds a defendant guilty as charged and the indictment alleges the use of a deadly weapon. *See Polk v. State*, 693 S.W.2d 391, 394 (Tex.Crim.App.1985). The jury charge permitted the jury to find Appellant guilty only if they found that he used the deadly weapon with the intent to cause serious bodily injury. Therefore, the unanimous jury finding that Appellant used the deadly weapon with the intent to cause serious bodily injury comprehends the second subpart of the definition of a deadly weapon. Said another way, an individual juror could not have found Appellant guilty—finding that he struck Cathey with the motor with intent to cause serious bodily injury—without finding that the intended use of the motor was to cause serious bodily injury (subpart 2). The hypothetical problem of a nonunanimous decision on the issue of the deadly weapon finding is simply not present in this case. We overrule Appellant's eighth issue.

### APPELLANT'S GANG AFFILIATION

In his ninth issue, Appellant complains that the trial court erred when it permitted Lucian Castro, an employee of the prison system, to testify that Appellant had identified himself as a member of the Latin Kings, a clique or gang. Specifically, Appellant complains that his statement should not have been introduced because it was not recorded and because he was subject to punishment by prison officials if he did not answer their questions.

---

**3.** Appellant did not object to the jury charge on the ground presented here, and so we review this matter for egregious harm, if any. *Ngo*, 175 S.W.3d at 744.

*Analysis*

■ Castro testified during the punishment phase of the trial. Before the punishment phase began, Appellant's counsel raised a number of objections to the proposed testimony about Appellant's gang membership. First, counsel moved to "renew the objections [ ] to the State's notice of witnesses." Next, counsel complained that the defense had not been provided with records relating to Appellant's gang status in a timely manner, and so was unprepared to cross examine the State's witnesses. That objection was overruled, and the trial court asked counsel to "go ahead and state another legal—if you have another legal objection, go ahead and state it." Counsel then objected that the gang evidence was reputation or opinion evidence and was inadmissible under Texas Rule of Evidence 405. The trial court decided that this objection was too speculative and instructed the parties to object at the time they anticipated objectionable testimony was about to be offered. The trial court reaffirmed that it was overruling Appellant's objection to the notice of the evidence and to "timeliness."

Appellant's counsel renewed the objection when Castro was called as a witness. Counsel stated, "Your Honor, I am—I would object at this time and I renew my request for a hearing under Rule 405 to establish whether or not any reputation or character evidence was known prior to the date of the offense." That objection was overruled and counsel asked for a running objection. The court granted a running objection "based on what [counsel had] said." Counsel then restated the objections: "Based on my objections of my [sic] timeliness—lack of timeliness on the notice, insufficient notice, insufficient how the record should be prepared, and lack of hearing [ ] under Rule 405." Without further objection, Castro testified that Appellant had identified himself as a member of the Latin King clique and stated that Appellant had signed documents admitting as much.

■ As a prerequisite to raising a complaint on appeal, a party must lodge an objection before the trial court. TEX. R.APP. P. 33.1. This requirement serves valuable purposes, the most important being that a prompt objection provides the trial court or the opposing party an opportunity to rectify or avoid a problem immediately. *Reyna v. State*, 168 S.W.3d 173, 179 (Tex.Crim.App.2005). Appellant's counsel objected to a perceived lack of notice and the perceived improper use of character evidence. The present complaint, that the statement was not recorded and was taken under legal compunction, is waived for failure to raise it in the trial court. TEX.R.APP. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex.Crim.App. 1998). We overrule Appellant's ninth issue.

### DISPOSITION

We *affirm* the judgment of the trial court.