COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

JOSE RAUL GUARDADO, §

§           No. 08-11-00030-CR

           Appellant, §

§           Appeal from the

v. §

§       Criminal District Court Number One

THE STATE OF TEXAS, §

§         of Tarrant County, Texas

           Appellee. §

§          (TC# 1183784D)

## **O P I N I O N**

Appellant Jose Raul Guardado was indicted for the offense of aggravated sexual assault of a child, and two counts of the offense of indecency with a child by touching.[1]  Appellant entered a plea of not guilty to the charged offenses and proceeded to a trial on the merits.  The jury found Appellant guilty of aggravated sexual assault of a child and guilty of one count of indecency with a child by touching.  At the conclusion of the punishment phase of the trial, the jury recommended punishment of eighteen (18) years confinement in the Institutional Division of the Texas Department of Criminal Justice for the aggravated sexual assault of a child offense and five (5) years confinement for the indecency with a child by touching offense.  The trial court imposed the sentence in accordance with the jury's recommendation and elected to run the sentences concurrently.  Appellant raises three issues in this Court.  First, that the trial court erred by admitting evidence of extraneous conduct in violation of the Texas Rules of Evidence.  Second, that the trial court erred when it did not give the jury a limiting instruction at the time

---

[1] This case was transferred from the Second Court of Appeals to this Court pursuant to a docket equalization order entered by the Texas Supreme Court.  *See* TEX.GOV'T CODE ANN. § 73.001 (West 2005).  We have applied precedent of the Fort Worth Court of Appeals.  *See* TEX.R.APP.P. 41.3.

the extraneous conduct evidence was admitted, and third, that the trial court erred by permitting a State's witness to testify as an expert regarding children as victims of sexual abuse.

*Background*

During the summer of 2009, OP, at the time a ten year-old girl, was residing with her parents and three siblings. Appellant is OP's uncle, and is married to Fabiana Guardado, OP's aunt. OP spent at least one night with Appellant and Fabiana during that summer. One morning, she was watching television when Appellant sat down next to her on the couch. OP testified that Appellant removed her pants and panties and licked her "middle part" with his tongue. OP stated that a girl uses her middle part to urinate. She also testified that immediately after Appellant licked her, he touched her "boobs" underneath her shirt and bra.

OP never saw Appellant after this incident, although she and her family were with him on many occasions prior to the incident. OP told the jury that prior to this incident, she recalled other times when Appellant wrestled and tickled her and that these other instances occurred at Appellant's house, the pool, and the lake. She testified that on some of these occasions, Appellant touched her "boobs" and that while she always wore a bra, Appellant touched her underneath her clothes.

That same summer, while spending the night with a friend named Samantha, OP apparently told Samantha that OP's grandfather had been sexually abusing her. The girls had recently watched a television show dealing with the topic of sexual abuse. However, on cross-examination, OP denied ever telling anyone that her grandfather had touched her inappropriately, and denied ever having watched a television show about sexual abuse, although she admitted that she had told another friend, Yazmin, that she had seen such a television show at Samantha's

2

house. OP testified that the police came to her house "not that long" after Appellant had touched her, and that she told her mother what had happened after the police departed the residence.

Appellant was also charged in a cause separate and apart from the instant cause, with two counts of the offense of indecency with a child, SV, by touching. Specifically, count one charged Appellant with touching SV's breast and count two charged him with touching SV's genitals. The indictment further alleged that SV was a child younger than 17 years and not Appellant's spouse. The State intended to proceed to trial on both indictments, but following a ruling by the trial court only proceeded to trial on OP's case.

Detective Corinthia Campbell testified that she was a detective with the Arlington Police Department and investigated OP's complaint against Appellant. Detective Campbell told the jury that the initial report was that OP had been sexually assaulted by her grandfather, but the investigation revealed that Appellant was actually the individual who had committed the offense.

*Extraneous Conduct Evidence*

Detective Campbell also testified that her investigation caused her to file a second case against Appellant for sexually abusing SV. When the State informed the trial court that it intended to offer testimony of an extraneous indecency offense committed by Appellant against SV, Appellant objected arguing that he had not opened the door to such testimony. The State offered other theories for the admission of the extraneous conduct, specifically that Appellant had presented a defense based on OP fabricating the allegations against him, and that the conduct was "admissible to show a common scheme or plan being that the offenses are almost identical as far as the defendant's motive, intent, knowledge, plan." The trial court held that the extraneous conduct evidence was admissible pursuant to Texas Rule of Evidence 404(b).

Appellant requested that the trial court give the jury a limiting instruction "at the time that the testimony is offered as well as in the final charge," and the trial court agreed to do so.

SV then testified that: (1) she was thirteen years old at the time of trial; (2) she went over to Appellant's house "a lot;" (3) while she was there, she played hide and seek with Appellant; and (4) Appellant had touched her "boobs" under her shirt and bra. SV did not recall when or how many times the touching may have occurred but remembered that OP was with her when it happened. Despite the trial court's agreement to provide the jury with a limiting instruction regarding SV's testimony at the time of her testimony, no such instruction was given.[2]

Another witness, Cyntia Castillo informed the jury that she lived with Appellant and Fabiana for a period of time, and that OP is her niece. She testified that during the summer of 2009, she slept in her nephew's bed and that Appellant came into the room "every once in a while." She stated that at some point one night, "after having gone in and looking a number of times," Appellant "got close to the bed and laid down and lifted up the blanket" and "moved" Ms. Castillo's hair. When Ms. Castillo inquired as to what Appellant was doing, he responded "[w]ell, I thought it was O[P]."

Prior to Ms. Castillo's testimony, the State informed the trial court that it intended to offer her testimony as "contextual" and "arising out of the same transaction" as the indicted offenses.[3] Appellant argued that the notice was late and constituted a surprise as well as being inadmissible evidence pursuant to Texas Rule of Evidence 404(b) and Article 38.37 of the Texas Code of Criminal Procedure. Appellant also argued that: (1) Ms. Castillo's testimony would be hearsay under Texas Rule of Evidence 801; (2) the testimony was not relevant under Texas Rule

---

[2] It must be noted that while Appellant made his request at an earlier point in the trial, no such instruction was ever re-urged to the trial court either immediately prior or subsequent to SV's testimony.

[3] The State provided Appellant written notice of its intent to offer evidence of this bad act on November 5, 2010.

4

of Evidence 401; and (3) its probative value was substantially outweighed by the danger of unfair prejudice under Texas Rule of Evidence 403. The trial court overruled each of Appellant's objections and permitted Ms. Castillo to testify.

Appellant argues that the trial court erred when it admitted evidence outlined above of the two instances of extraneous conduct in violation of the Texas Rules of Evidence. Specifically, Appellant argues that the trial court should not have permitted either SV or Cyntia Castillo to testify.

*Standard of Review*

When reviewing a trial court's decision to admit extraneous offense evidence under Rule 404(b), or over a Rule 403 objection, an appellate court applies an abuse-of-discretion standard. *See De La Paz v. State*, 279 S.W.3d 336, 343 (Tex.Crim.App. 2009). A trial court abuses its discretion only when its decision lies outside "the 'zone of reasonable disagreement.'" *Id*. at 343-44. The general rule is that the defendant is to be tried only for the offense charged, not for any other crimes or for being a criminal generally. *Segundo v. State*, 270 S.W.3d 79, 87 (Tex.Crim.App. 2008); *Crank v. State*, 761 S.W.2d 328, 341 (Tex.Crim.App. 1988). Evidence of extraneous acts of misconduct may be admissible if: (1) the uncharged act is relevant to a material issue in the case, and (2) the probative value of that evidence is not significantly outweighed by its prejudicial effect. *Segundo*, 270 S.W.3d at 87.

Relevant evidence is any evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R.EVID. 401; *Rankin v. State*, 974 S.W.2d 707, 709 (Tex.Crim.App. 1996).

5

"Evidence of other crimes, wrongs or acts" may not be admitted during the guilt-innocence phase of trial "to prove the character of a person in order to show action in conformity therewith." TEX.R.EVID. 404(b); *Marc v. State*, 166 S.W.3d 767, 775 (Tex.App.--Fort Worth 2005, pet. ref'd). However, such evidence of extraneous offenses may be admitted to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX.R.EVID. 404(b). The Court of Criminal Appeals has explained, "'Rule 404(b) is a rule of inclusion rather than exclusion.' The rule excludes only that evidence that is offered (or will be used) solely for the purpose of proving bad character and hence conduct in conformity with that bad character." *De La Paz*, 279 S.W.3d at 343 [Footnotes omitted]. The State, as the proponent of extraneous offense evidence, bears the burden of showing admissibility. *Russell v. State*, 113 S.W.3d 530, 535 (Tex.App.--Fort Worth 2003, pet. ref'd); *Rankin*, 974 S.W.2d at 718 (op. on reh'g).

*Application*

In his first issue, Appellant essentially contends that the admission of SV and Ms. Castillo's testimony failed to make a fact of consequence more or less probable relative to the trial on the charged offenses, and that SV and Ms. Castillo's testimony was so substantially prejudicial that it outweighed any probative value the testimony may have had. We disagree.

As noted above, while evidence of other crimes, wrongs, or acts may not be admitted during the guilt-innocence phase of trial to prove the character of a person in order to show action in conformity therewith, such evidence of extraneous offenses may be admitted to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX.R.EVID. 404(b); *Marc*, 166 S.W.3d at 775. Here, the extraneous evidence had a tendency to make the existence of a fact of consequence more probable than it would have been

without the evidence, and was therefore relevant to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See* TEX.R.Evid. 401; *Rankin*, 974 S.W.2d at 709.

Next, although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. TEX.R.EVID. 403.

Once a Rule 403 objection is made, the trial court must weigh the probative value of the evidence to determine if it is substantially outweighed by its potential for unfair prejudice. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex.Crim.App. 1997). A Rule 403 balancing test includes the following factors: (1) the inherent probative force of the proffered item of evidence along with, (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 & n.8 (Tex.Crim.App. 2006).

1.  Probative Value and Need

In this case, the trial court could have concluded that the extraneous offense evidence was relevant, probative, and necessary to rebut Appellant's defensive theory that because OP may have told another person that her grandfather was the perpetrator, she must have fabricated her allegation against Appellant. *See Ransom v. State*, 920 S.W.2d 288, 301 (Tex.Crim.App. 1994);

7

*Bass v. State*, 270 S.W.3d 557, 563 (Tex.Crim.App. 2008).[4] In addition, the trial court could have concluded, and in fact did conclude that the extraneous offense evidence was relevant, probative and necessary to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

2. Unfair Prejudice

The trial court could have reasonably determined that the extraneous offense evidence did not have a tendency to suggest a decision on an improper basis and that the challenged evidence tended to prove Appellant's intent, knowledge, identity, or that his actions were not the result of an accidental touching. Although the extraneous evidence had the potential to evoke an emotional response in the jury, it is clear from the record that the State introduced the evidence to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Additionally, in the trial court's charge to the jury, the trial court instructed the jury that it could only consider the extraneous offense evidence in determining "intent, knowledge, identity, or absence of mistake or accident, if any, in connection with the crimes alleged in the indictment in this case, and for no other purpose." Such a limiting instruction certainly mitigated and/or eliminated the potential of improper consideration of the extraneous evidence by the jury, if there was any.

3. Confusion of the Issues

The trial in this cause lasted approximately two days and encompasses some 300 plus pages of the record. The State called eight witnesses and the defense called one witness.

---

[4] Despite Appellant's contention that the trial court did not permit the testimony as a rebuttal to Appellant opening the door with a fabrication defense, the trial court clearly stated that "the victim opened the door under recent fabrication" (presumably as a result of OP's cross-examination answers related to whether she had ever told anyone that she had been abused by her grandfather) but that the court was allowing the testimony pursuant to a common scheme or design theory.

Both the direct and cross-examinations of Cyntia Castillo and SV are concluded within 23 pages of the record. In other words, the State's presentation of the extraneous offense evidence consumed very little time in comparison to the length of the State's case-in-chief.

Additionally, the trial court reasonably could have concluded that the extraneous offense evidence assisted the jury in understanding Appellant's motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake relative to his conduct in connection with the crimes alleged in the indictment in this case. Accordingly, the trial court could have reasonably concluded that the extraneous offense evidence did not have a tendency to confuse or distract the jury from the main issues in the case.

4. Misleading the Jury

The State's evidence regarding the aggravated sexual assault and two counts of indecency with a child was much more detailed than the extraneous offense evidence. The main thrust of the State's case was the charged offenses. Although the State presented evidence of the extraneous offenses, it did not suggest that the evidence could or should be used to convict Appellant for the offense against SV or that Appellant had even committed an offense against Cyntia Castillo.[5] The extraneous offense evidence was presented in a fashion to prove Appellant's intent or knowledge of the aggravated sexual assault and indecency with a child offenses charged in the indictment. The trial court could have reasonably concluded that the extraneous offense evidence did not have a tendency to be given undue weight by a jury that was not equipped to evaluate the probative force of the evidence.

5. Undue Delay and Needless Presentation of Cumulative Evidence

---

[5] The evidence regarding Ms. Castillo was offered under a theory that it was necessary to provide context and helped to establish Appellant's common scheme or plan in light of his belief that Ms. Castillo was in fact OP.

9

As stated above, although the trial of the cause lasted approximately two days, the time spent by the prosecutor presenting the extraneous evidence, the trial court's time instructing the jury regarding the extraneous offenses, and the defense's time cross-examining the witnesses concerning the extraneous offenses was not significant in comparison to the total length of the trial. As such, the trial court could have reasonably concluded that the presentation of the extraneous offense evidence would not consume an inordinate amount of time, and indeed, it did not. Additionally, the trial court could have determined that the extraneous offense evidence was not cumulative of other evidence presented at trial.

After balancing the Rule 403 factors, as the trial court clearly did, we conclude that the trial court could have reasonably determined that the probative value of the extraneous offense evidence was not substantially outweighed by the countervailing factors specified in the rule. *See* TEX.R.EVID. 403. We cannot say that the trial court's ruling was outside the "zone of reasonable disagreement." *De La Paz*, 279 S.W.3d at 343-44. As a result, we hold that the trial court did not abuse its discretion by admitting the extraneous offense evidence. *See* TEX.R.EVID. 403, 404.

*Harm Analysis*

Had we concluded that the trial court erred by admitting the evidence of extraneous conduct, we would then be obligated to determine whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." *Whitaker v. State,* 286 S.W.3d 355, 363 (Tex.Crim.App. 2009), *quoting King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997); *see* TEX.R.APP.P. 44.2(b). If the error had no influence or only a slight influence on the verdict, it is harmless. *Whitaker*, 286 S.W.3d at 362-63. The error is harmful when the reviewing court has "grave doubts" that the error did not affect the outcome of the trial.

10

*Williams v. State,* 145 S.W.3d 737, 741 (Tex.App.--Fort Worth 2004, no pet.). A grave doubt is one in which "in the judge's mind, the matter is so evenly balanced that he . . . feels himself . . . in virtual equipoise as to the harmlessness of the error." *Williams*, 145 S.W.3d at 741, *quoting Russell v. State*, 113 S.W.3d 530, 550 (Tex.App.--Fort Worth 2003, pet ref'd). This Court must calculate, to the extent possible, the probable impact of the error on the jury in light of the existence of other evidence. *Wesbrook v. State,* 29 S.W.3d 103, 119 (Tex.Crim.App. 2000). The presence of overwhelming evidence may be a factor in the evaluation of harmless error. *Id.*; *Motilla v. State,* 78 S.W.3d 352, 357 (Tex.Crim.App. 2002)("our conclusion . . . that overwhelming evidence of guilt is a factor to be considered . . . applies to harm analysis conducted under the current rules.").

In reviewing the entirety of this case, we find nothing in the record which suggests that the admission of evidence of extraneous conduct had a substantial and injurious effect or influence on the jury's verdict. We have no grave doubts that the error, if any, affected the outcome of the trial. The evidence presented against Appellant was substantial, compelling, and indeed, overwhelming. OP identified Appellant as the person who sexually assaulted her. Excluding the evidence presented by SV and Cyntia Castillo, OP's testimony was detailed and unequivocal and supported by the State's other witnesses. In light of the foregoing, any error in the admission of the evidence of extraneous conduct, and we have found none, was harmless.

Appellant also contends that the trial court erred when it permitted Cyntia Castillo to testify as to her interaction with Appellant as outlined above, over his objection pursuant to Article 38.37 of the Texas Code of Criminal Procedure. The article provides, in relevant part, as follows:

Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:

(1) the state of mind of the defendant and the child; and

(2) the previous and subsequent relationship between the defendant and the child.

*See* TEX.CODE CRIM.PROC.ANN. art. 38.37, § 2 (West Supp. 2011).

In this case, the evidence that Appellant repeatedly approached Cyntia Castillo as she laid in bed that night, that he laid down on the bed next to her, lifted the blanket covering her and moved her hair, all the while believing that Cyntia Castillo was OP, who often slept in that bed when she spent the night at Appellant's home, falls within the type of evidence allowed under Article 38.37. The record reflects that the extraneous acts were admissible under Article 38.37 to show Appellant's state of mind, as well as the previous and subsequent relationship between Appellant and OP as well as how Appellant approached his victims. *See Hinojosa v. State*, 995 S.W.2d 955, 957-58 (Tex.App.--Houston [14th Dist.] 1999, no pet.).

*Limiting Instruction*

Appellant also contends that the trial court erred by not giving a limiting instruction to the jury at the time the extraneous conduct evidence was admitted.

If extraneous acts are deemed admissible by the trial court, "the jurors must be instructed about the limits on their use of that extraneous act if the defendant so requests." *Ex parte Varelas*, 45 S.W.3d 627, 631 (Tex.Crim.App. 2001)(en banc). Furthermore, if a defendant requests a limiting instruction to the admitted extraneous acts, he is entitled to one. *See id.* A trial court errs when it fails to give a requested limiting instruction in this situation. *See id.*, *citing Abdnor v. State (Abdnor II),* 808 S.W.2d 476, 478 (Tex.Crim.App. 1991). Finally, when extraneous offenses and acts are admitted for a limited purpose, a defendant is entitled, during

12

the guilt/innocence phase of the trial to request an instruction in the charge that jurors are not to consider extraneous acts or offenses admitted for a limited purpose unless they believe beyond a reasonable doubt that those extraneous acts were committed by the defendant. *See Varelas*, 45 S.W.3d at 631-32, *citing George*, 890 S.W.2d at 76. Likewise, if a defendant's counsel requests an instruction for the jury that they "could not consider the extraneous act evidence unless they believed beyond a reasonable doubt that the [defendant] committed those acts, the requested charge should have been given." *Varelas*, 45 S.W.3d at 631.

When a trial court errs by failing to give a contemporaneous limiting instruction, that error is non-constitutional and is subject to a harmless error analysis pursuant to Texas Rule of Appellate Procedure 44.2(b). *Jones v. State*, 944 S.W.2d 642, 653-54 (Tex.Crim.App. 1996), *cert. denied*, 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997); *Jones v. State*, 119 S.W.3d 412, 423-24 (Tex.App.--Fort Worth 2003, no pet.). A non-constitutional error is harmless unless it affects a defendant's substantial rights. TEX.R.APP.P. 44.2(b); *Jones*, 119 S.W.3d at 424. A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997), *citing Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946). Conversely, an error does not affect a substantial right if we have a fair assurance that the error did not influence the jury, or had but a slight effect. *Solomon v. State*, 49 S.W.3d 356, 365 (Tex.Crim.App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998). In making this determination, we review, among other things, the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in

13

connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex.Crim.App. 2002).

Here, as noted above, Appellant requested that the trial court give the jury a limiting instruction "at the time that the testimony is offered as well as in the final charge," and, although the trial court agreed to do so, no contemporaneous instruction was given to the jury either prior or subsequent to the testimony of Cyntia Castillo or SV.

The record reflects ample evidence of Appellant's guilt because OP's testimony about Appellant's actions is sufficient to support the jury's verdict as to each of the charged offenses. Moreover, the extraneous evidence was not more heinous or inflammatory than the evidence pertaining to the charged offenses, minimizing its prejudicial effect even in the absence of a contemporaneous limiting instruction. *See, e.g., Jones*, 944 S.W.2d at 654; *Jones*, 119 S.W.3d at 425. And the jury charge contained a limiting instruction with regard to the extraneous conduct committed by Appellant, which further reduced the risk that the jury might misuse the evidence during their deliberations.[6] *See Jones*, 119 S.W.3d at 425. For these reasons, we conclude that any error by the trial court in failing to give the jury a contemporaneous limiting instruction as to the extraneous offenses was harmless. *See* TEX.R.APP.P. 44.2(b).

Appellant's first and second issues are overruled.

*Expert Testimony*

---

[6] Specifically, the Court instructed the jury:

> You are instructed that if there is any testimony before you in this case regarding the defendant's having committed crimes, wrongs or acts other than the crimes alleged in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other crimes, wrongs or acts, if any were committed, and even then you may only consider those other crimes, wrongs or acts in determining the proof of intent, knowledge, identity or absence of mistake or accident, if any, in connection with the crimes alleged in the indictment in this case, and for no other purpose.

14

In his third issue, Appellant argues that the trial court erred by allowing State's witness, Lindsey Dula, a forensic interviewer of child victims of sexual assault, to provide the jury with expert testimony regarding children as victims of sexual abuse.[7] The trial court ruled that Ms. Dula would not be permitted to testify as an expert witness given that the State had failed to disclose her as such.[8] However, the trial court allowed Ms. Dula to testify in rebuttal of defensive theories raised that OP may have talked with other individuals between the initial involvement of the authorities and the time of the forensic interview and that OP may have watched television shows where sexual abuse was suggested to her.

We review a trial court's decision to admit or exclude testimony, including lay or expert testimony, under an abuse of discretion standard. *Ellison v. State*, 201 S.W.3d 714, 723 (Tex.Crim.App. 2006); *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex.Crim.App. 2002).

Opinion testimony is not limited to experts. TEX.R.EVID. 701; *Osbourn*, 92 S.W.3d at 535-36. A lay witness may offer opinions or inferences as long as they are: (1) rationally based on the perception of the witness; and (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. *Id.* Further, witnesses who possess training and experience are not precluded from offering lay testimony regarding events they have personally observed. *Osbourn*, 92 S.W.3d at 536. Their observations, which do not require significant

---

[7] The State argues that Appellant failed to preserve this issue for our review because the trial court never ordered the State to disclose any expert witnesses, and absent such an order, no claim is preserved. *See* TEX.CODE CRIM.PROC.ANN. art. 39.14(b)(West Supp. 2011); *Tamez v. State*, 205 S.W.3d 32, 39 (Tex.App.--Tyler 2006, no pet.). The State further contends that Appellant's claims in this regard do not comport with his objections at trial. *See Sterling v. State*, 800 S.W.2d 513, 521 (Tex.Crim.App. 1990). After a careful review of the record, we conclude that Appellant's representation to the trial court that his motion for disclosure of expert witnesses had previously been granted and which representation was not challenged by the State was sufficient to preserve the issue for our review. Additionally, in light of the lengthy discussion between Appellant's counsel, counsel for the State, and the trial court regarding Appellant's objections to Ms. Dula's testimony as well as the trial court's granting of numerous objections by Appellant regarding information which could have been considered expert testimony, we again conclude that the issue has been sufficiently preserved for our review.

[8] Although the State did include Ms. Dula on its witness list.

expertise to interpret and are not based on scientific theory, can be admitted as lay opinions. *Osbourn*, 92 S.W.3d at 537.

However, not all observations by witnesses with experience and training can be admitted as lay opinion testimony. *See Osbourn*, 92 S.W.3d at 537 (discussing *Emerson v. State*, 880 S.W.2d 759, 763 (Tex.Crim.App. 1994), which held that an officer's opinion based on observations while administering the horizontal gaze nystagmus (HGN) test, a test based on a scientific theory, could only be admissible as expert testimony under Rule 702). Generally, "observations which do not require significant expertise to interpret and which are not based on a scientific theory can be admitted as lay opinions if the requirements of Rule 701 are met. This is true even when the witness has experience and training." *Osbourn*, 92 S.W.3d at 537. Moreover, a lay witness with sufficient personal experience and knowledge may be qualified to express an opinion on a matter outside the realm of common knowledge with respect to events not normally encountered by most people in everyday life. *Id.* "It is only when the fact-finder may not fully understand the evidence or be able to determine the fact in issue without the assistance of someone with specialized knowledge that a witness must be qualified as an expert." *Id.*

In addition, the requirement in Rule 701 that the opinion or inference of a lay witness be "rationally based on the perception of the witness" has two elements. *Harnett v. State*, 38 S.W.3d 650, 657-58 (Tex.App.--Austin 2000, pet. ref'd), *citing* 2A Steven Goode, Olin Guy Wellborn, III & M. Michael Sharlot, COURTROOM HANDBOOK ON TEXAS EVIDENCE, ch. 5, art. VII, at 413 (Texas Practice 2000). The first element is personal knowledge gained by perception of fact by the senses of the witness, including what was seen, heard, smelled, tasted, touched, or felt. *Id.* at 658, *citing Bigby v. State*, 892 S.W.2d 864, 889 (Tex.Crim.App. 1994).

16

The second element is the opinion must be one that a reasonable person could draw from underlying facts. *Harnett*, 38 S.W.3d at 658, *citing Fairow v. State*, 943 S.W.2d 895, 900 (Tex.Crim.App. 1997).

Appellant complains that Ms. Dula testified as an expert witness when she testified, based on her training and experience, that: (1) a television show on child abuse would not influence a child to make up instances of abuse; and (2) one child's outcry of child abuse would not influence another child to make a false outcry of abuse.

We find Ms. Dula's testimony, under these circumstances, to be that of a lay witness because it satisfies the requirements of Rule 701. First, we disagree with Appellant's assertion and find that Ms. Dula's opinion was rationally based on her perception of the witness. She testified she had experience interviewing more than 5,000 children as a forensic interviewer, giving her personal knowledge gained by her own observation and interaction with children, and specifically her observation and interaction with this child. Further, a reasonable person could have such opinions by spending a significant amount of time around children. Second, her opinion was not based on a scientific theory. Rather, it was helpful to the jury and did not require significant expertise to interpret. *See Osbourn*, 92 S.W.3d at 537. Therefore, the trial court did not abuse its discretion by admitting Ms. Dula's testimony as lay testimony. *See Ellison*, 201 S.W.3d at 723; *Osbourn*, 92 S.W.3d at 537.

Appellant's third issue is overruled.

Having overruled each of Appellant's issues, the judgment of the trial court is affirmed.


July 11, 2012

CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

17

(Do Not Publish)