Raul Garza **TAMEZ**

v.

**DIRECTOR, TDCJ–CID.**

Civil Action No. 6:07cv362.

United States District Court,
E.D. Texas,
Tyler Division.

April 28, 2008.

Raul Garza Tamez, Abilene, TX, pro se.

Carole Susanne Callaghan, Texas Attorney General, Austin, TX, for Respondent.

*MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND ENTERING FINAL JUDGMENT*

MICHAEL H. SCHNEIDER, District Judge.

The Petitioner Raul Garza Tamez, proceeding *pro se*, filed this application for the writ of habeas corpus under 28 U.S.C. § 2254 complaining of the legality of his conviction. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

Tamez complained of a conviction for murder which he received in the 3rd Judicial District of Anderson County, Texas, for which he received a sentence of life imprisonment. The facts of the case involved a murder within TDCJ–CID, in which the evidence showed that Tamez was placed in the cell of an inmate named William Cathey, with whom he had a dispute; when the door to the cell was opened for Cathey, Tamez rushed out and assaulted him with a fan motor wrapped in a sock, causing injuries resulting in Cathey's death.

In his petition, Tamez asserted that he received ineffective assistance of counsel, the trial court allowed him to be tried in leg irons and shackles in front of the jury, and a coerced confession was used against him.

The Magistrate Judge ordered the Respondent to answer the petition, and Tamez did not file a response to the answer. The Magistrate Judge also received copies of the state court records. After review of the pleadings and records, the Magistrate Judge issued a Report on April 4, 2008, recommending that the petition be dismissed. Tamez filed objections to the Report on April 22, 2008.

In his objections, Tamez says first that his attorney, Barbara Law, had a conflict of interest because she worked for State Counsel for Offenders, a division of TDCJ. He says that this conflict was demonstrated by the fact that Law did not bring up the fact that Tamez had been placed in an empty cold cell, without clothing, blankets, or a mattress, with nothing to shelter himself from the cold, which conditions resulted in the coerced confession.

However, as noted by the Magistrate Judge, nothing in the record supports Tamez's bald assertion concerning the cell conditions in which he was allegedly placed. Tamez says that Sgt. Kennedy testified that she took his clothes away, but later in her testimony, she stated that she did not recall whether she had given Tamez clothes in exchange. The record is simply silent as to Tamez's assertion that he was placed naked into a cold cell, or that any such conditions caused his confession to be involuntary.

The Fifth Circuit has held that "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsubstantiated by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011–12 and n. 2 (5th Cir. 1983); *see Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir.1990). Tamez's bald assertions concerning the cell conditions, which he says taint the voluntariness of his confession, are unsupported and unsubstantiated by anything in the record, and thus lack probative evidentiary value.

■ Although Tamez says that Law had a "conflict of interest," he has not pointed to any facts which show that Law either had or demonstrated any loyalty to the Texas Department of Criminal Justice rather than to him. Similar arguments—for example, that public defenders have a conflict of interest because they are paid by the State—have been rejected by the courts. *See, e.g., Pasillas–Martinez v. U.S.,* No. EP–05–0152–DB, 2005 WL 1397012 (W.D.Tex., June 2, 2005) (unpublished) (available on WESTLAW at 2005 WL 1397012) (rejecting claim of conflict of interest because public defender paid by United States just like the U.S. Attorney is), *citing Mickens v. Taylor,* 535 U.S. 162, 165–66, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002). *Mickens* held that until the defendant shows that counsel "actively represented conflicting interests," he has not established a constitutional predicate for his claim of ineffective assistance. Here, Tamez has not shown that Law actively represented conflicting interests, and so his claim on this point is without merit.

Second, Tamez discusses the issue of his alleged shackling before the jury. After reviewing the record, the Magistrate Judge ascertained that there was some indication that Tamez had been in leg shackles, but that the record strongly implied that these shackles had not been visible to the jury. Immediately before Tamez testified, Law stated that Tamez had been in shackles and that he had been at the end of the counsel table; the judge stated that Tamez would be placed in the witness box before the jury came in (in other words, the jury would not see him walk to the witness box in leg shackles) and that his hands would be left unshackled. The Magistrate Judge observed that if the shackles had been visible to the jury during the trial, there would have been no reason for concern regarding having him walk to the witness box.

In addition, the Magistrate Judge said, the jury was aware that Tamez was a prisoner in TDCJ, and that he had previous convictions for possession of a deadly weapon in a penal institution and burglary of a habitation. The Magistrate Judge stated that even if the jurors did see his shackles, they were unlikely to be surprised or prejudiced by this fact, but rather would reasonably have assumed that the shackles were due to Tamez's pre-existing status as an inmate. The Magistrate Judge thus concluded that any error which may have arisen from the fact that Tamez was shackled did not contribute to the finding of guilt or assessment of a life sentence.

■ In his objections, Tamez says that the jury had a direct view of his shackles during the entire proceeding, but points to nothing in the record which confirms this bald assertion. He says that he has a witness affidavit from an inmate witness saying that Tamez's shackles were visible from the witness stand, and he says that the witness box is "next to" the jury box, and again speculates that Law was "prohibited from advocating against TDCJ security personnel." Tamez does not refer to the precautions taken by the trial judge to prevent the jury from seeing the shackles by placing him in the witness box outside of the presence of the jury.

Instead, he says that the Report "tries to lighten the burden" by pointing out that he was a prisoner, and says that this argument must fail because he is presumed innocent until proven guilty. While he undoubtedly enjoyed the presumption of innocence during trial, the Report stated that the jury knew that Tamez was already a prisoner in TDCJ and would thus reasonably conclude that the shackles were due to that pre-existing state and did not pertain to whether or not he was guilty of the present charge; in other words, even

assuming that the jurors did see the shackles, they could still presume him innocent of the murder charge, knowing that he was shackled because he was already a prisoner. The Magistrate Judge properly concluded that the evidence showed beyond a reasonable doubt that even if the jury saw leg shackles on Tamez, this did not contribute to the finding of guilt or the assessment of a life sentence. Tamez's claim on this point is without merit.

■ Third, Tamez complains of an alleged failure to investigate the mitigating evidence which he presented, including evidence of an abusive childhood and a mental disorder. He cites cases in which he says that the failure to raise evidence of an abusive childhood was held to be error and says that he told Law about his own background, but that she said that it was "not mitigating." He says that his uncle visited Law several times and she never asked about Tamez's childhood, family background, or "embarrassing secret." He explained that he told Law that he was sexually abused as a child by his uncle, that he was physically abused by his parents, and that he had twice tried to commit suicide.

Tamez argues that had counsel presented this evidence, the jury would have perceived that Tamez had an "immediate necessity" to defend himself against Cathey, whom he says had a "known propensity for violence" and had threatened to rape and kill him. He complains that the Report said that there is no "unspoken policy" of letting inmates fend for themselves, citing a case called *January v. State*, 811 S.W.2d 631 (Tex.App.-Tyler 1991); however, the decision in *January* rejected the use of the necessity defense to the charge of possession of a deadly weapon in a penal institution, saying that to allow inmates to possess deadly weapons under any circumstances would seriously undermine the security of the penal institution.

As the Magistrate Judge observed, there is no evidence in the record to support Tamez's bald assertion that he was the victim of childhood physical or sexual abuse. In the absence of any such evidence, Tamez's bald assertion alone, unsupported and unsubstantiated by any other evidence, lacks probative evidentiary value. His claim on this point is without merit.

Third, Tamez refers to the issue of gang affiliation. He says that his confession referred to the "Mexican Mafia," and that it should have been redacted or a jury instruction given. As the Magistrate Judge observed, however, the confession said that Cathey had been falsely saying that Tamez was a member of the Mexican Mafia, which was done to cause problems between Tamez and the actual gang members. In affirming Tamez's conviction, the Court of Appeals pointed out that the confession indicated that Tamez was *not* a gang member and that Cathey was falsely saying that he was. Tamez has not shown that he was harmed by the fact that his confession stated that Cathey was falsely implying that he, Tamez, was in the Mexican Mafia, which was not true. Investigator Bill Jones testified that the incident was not gang-related.

During the punishment phase of the trial, a gang intelligence officer named Sgt. Castro testified that Tamez was a member of a gang called the Latin Kings. Law did object to this testimony and secured a running objection.

■ Tamez argues that the U.S. Supreme Court has held that it is unconstitutional to consider a defendant's membership in a racist gang, the Aryan Brotherhood, when that issue was not relevant to the crime or to any issue being decided in the punishment phase. *Dawson v. Delaware*, 503 U.S. 159, 165, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992). The

Texas courts have interpreted *Dawson* to hold that membership in a gang is admissible upon proof of the group's violent and illegal activities, and the defendant's membership in the group. *Mason v. State*, 905 S.W.2d 570, 577 (Tex.Crim.App. 1995). In this case, Sgt. Castro testified that Tamez admitted membership in the Latin Kings, and that the Latin Kings' activities included homicides, extortion, and drug trafficking. Tamez cites *Fuller v. Johnson*, 114 F.3d 491 (5th Cir.1997), but that case held that the defendant's gang membership was relevant to the question of future dangerousness in sentencing. Similarly, Tamez cites *Miller–El v. Johnson*, 261 F.3d 445 (5th Cir.2001), which also said that membership in an armed paramilitary group was relevant to the question of future dangerousness in sentencing.[1] In this case, Tamez's gang membership was relevant and admissible because it met the criteria set out by the Texas Court of Criminal Appeals in *Mason*. His objections on this point are without merit.

■ Next, Tamez talks about "seven removals" of jurors who were allegedly biased. As the Court of Appeals observed, the trial court worked together with defense counsel and the prosecutor to determine who should be struck or dismissed, to shortcut the process of excusing and removing jurors. *Tamez v. State*, 205 S.W.3d 32, 38 (Tex.App.-Tyler 2006, no pet.). All of Tamez's requests to challenge jurors were granted, and Tamez has not shown that he suffered any harm as a result of the shortcut employed by the trial court. His claim on this point is without merit.

In a related claim, Tamez argues that two TDCJ employees were left on the jury. Nothing in the record supports this assertion; Tamez makes bald allegations

that counsel admitted this to him, but absent any support in the record, his unsubstantiated contention lacks probative evidentiary value. Even were this true, Tamez has not shown that TDCJ employees would necessarily have been biased against him; his defense to the charges was that he was responding to the threats directed against him by Cathey, a defense which may have been more likely to resonate with persons familiar with the day-to-day realities of life within the prison. Tamez cites case law saying that if even one juror was improperly excluded, the defendant is entitled to a new sentencing hearing; but fails to show that any person was improperly excluded from jury service. His claim on this point is without merit.

■ Tamez argues that he should be entitled to an evidentiary hearing. However, the Fifth Circuit has stated that bald assertions on a critical issue in a habeas petition, unsupported and unsupportable by anything else contained in the record, are insufficient to warrant an evidentiary hearing. *Johnson v. Scott*, 68 F.3d 106, 112 (5th Cir.1995), *citing Byrne v. Butler*, 845 F.2d 501, 513–14 (5th Cir.), *cert. denied* 487 U.S. 1242, 108 S.Ct. 2918, 101 L.Ed.2d 949 (1988); *see also Theriot v. Whitley*, 18 F.3d 311, 315 (5th Cir.1994). Tamez's bald assertions, which are unsupported by anything in the record, do not warrant an evidentiary hearing.

■ Finally, Tamez sets out the law regarding discovery in habeas corpus cases. He does not specifically state that he should be entitled to discovery, nor does he show the requisite good cause; the record does not reveal that Tamez has ever filed a motion seeking discovery. To the extent that this may be construed as

---

1. In *Wainwright v. Lockhart*, 80 F.3d 1226 (8th Cir.1996), also cited by Tamez, there was

no evidence that the defendant belonged to any gang, unlike in the present case.

an objection to the Report of the Magistrate Judge, it is without merit.[2]

The Court has conducted a careful *de novo* review of the pleadings in this cause, including the original and supplemental petitions, the answer filed by the Respondent, the Report of the Magistrate Judge, the Petitioner's objections thereto, and all other pleadings, documents, and records in the case. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the objections of the Petitioner are without merit. It is accordingly

ORDERED that the Petitioner's objections are overruled and that the Report of the Magistrate Judge is ADOPTED as the opinion of the District Court. It is further

ORDERED that the above-styled application for the writ of habeas corpus be and hereby is DISMISSED with prejudice. Finally, it is

ORDERED that any and all motions which may be pending in this action are hereby DENIED.

## REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

JOHN D. LOVE, United States Magistrate Judge.

The Petitioner Raul Garza Tamez, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this application for the writ of habeas corpus under 28 U.S.C. § 2254, challenging the validity of his conviction. The petition was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

Tamez is challenging a conviction for murder which was handed down in the 3rd Judicial District Court of Anderson County, Texas, on March 18, 2005, for which he received a sentence of life imprisonment. The facts of the case, as stated by the Twelfth Judicial District Court of Appeals, were as follows:

> William Cathey and Appellant were both inmates at the Coffield Unit of the Texas Department of Criminal Justice. Appellant had been convicted of burglary and, once imprisoned, had been convicted of possession of a deadly weapon within a penal facility. Cathey had been convicted of murder. The two men were housed in single occupancy cells in a maximum security portion of the prison. On October 7, 2002, both men were allowed recreation. They were taken separately to adjoining recreation rooms. After about ten minutes, Appellant told the guard [Officer Mickens] that he needed to use the restroom. This meant that he would be escorted back to his cell and would forfeit the remainder of his recreation time. Offenders in this part of the prison are handcuffed when they are transported, and Appellant was handcuffed and taken back to the cell block.
>
> There had been words between Appellant and William Cathey. Accounts varied, but when interviewed after the assault, Appellant said that Cathey had identified him as a member of the Mexi-

---

**2.** Tamez has also filed motions during the pendency of this case asserting that his life is in danger from incidents unrelated to the legality of his conviction. Such incidents are not properly part of this habeas corpus action. *See Pierre v. U.S.*, 525 F.2d 933 (5th Cir.1976) (the purpose of habeas corpus is to grant relief from unlawful imprisonment or custody, and it cannot be used for any other purpose). Tamez is free to seek relief under the Civil Rights Act, 42 U.S.C. § 1983, if he believes that his civil rights have been violated through deliberate indifference to his safety.

can Mafia, a prison gang. Because he was not a member of the Mexican Mafia—Appellant was a member of the Latin Kings—this would place Appellant in danger if the actual Mexican Mafia members learned that he was claiming membership. Appellant also said that he had shared commissary items with Cathey, but that Cathey began to threaten him when he indicated that he would not share items any longer.

Appellant was escorted back to the cell block and placed in Cathey's cell. The parties agree that this happened due to the negligence of the officer on duty, but there was disagreement as to how it occurred. The State postulated that Appellant had identified Cathey's cell as his own to the inexperienced officer escorting him back from recreation. Appellant testified that he was not paying attention and the officer simply made a mistake and placed him in the wrong cell. Appellant testified that he did not notice he was in the wrong cell for some time because it was dark and because the cell was arranged in a manner similar to his own cell.

Cathey was brought back to his cell, handcuffed behind his back, almost an hour later. Cathey noticed that Appellant was in his cell, and he alerted the guard to that fact. The guard, who could not be located at the time of trial, either did not pay attention to Cathey or did not believe him. She asked the picket officer to open the door to the cell. When the door opened, Cathey began to run away. Appellant ran out of the cell and after Cathey. Appellant had the motor from a box fan wrapped in a sock in his hand. He caught up to Cathey and beat him with the improvised weapon. Inmates who witnessed the assault testified that Appellant hit Cathey in the head between six and twelve times with the device. One inmate testified that Appellant turned Cathey over after the

man had fallen and hit him in the face several more times. Cathey suffered extensive injuries. Specifically, his skull was fractured in several places, one of his eyes was ruptured, and the bones of his face and nose were broken.

Appellant laid down after the assault and was returned to custody. Cathey was taken to the infirmary. The authorities attempted to arrange to fly Cathey to Tyler by helicopter, but the weather was too bad to allow a flight. Instead, Cathey was driven by ambulance to a hospital in Palestine. The personnel there attempted to treat Cathey, but the decision was made to transfer him, again by ambulance, to a hospital in Tyler that had more capabilities. After Cathey arrived at the hospital in Tyler, a tube was inserted into his throat so that he could be connected to a mechanical ventilator. During this process, he aspirated some of the contents of his stomach into his lungs. The doctors tried to clean the stomach contents from his lungs on two occasions. Cathey suffered a cardiac arrest that night. The medical staff was able to resuscitate him, and he was moved into the intensive care unit for observation.

Cathey's condition worsened, and his family made the decision to remove him from life support two days after his admission to the hospital. Cathey died shortly thereafter. The medical examiner who conducted an autopsy concluded that Cathey died of complications from blunt trauma to the head. Appellant presented the testimony of an expert witness who testified that the injuries to Cathey's head were not sufficient to kill him. Appellant's expert witness concluded that Cathey died as a result of the attempt to intubate him. He testified that intubation was unnecessary and that it had been negligently performed, allowing the aspiration of the contents of

his stomach. Appellant's expert witness testified that the aspiration of the stomach contents induced a chemical pneumonia, which caused Cathey's death.

Appellant testified that he was frightened of Cathey, and that he had not intentionally hit him but merely swung the improvised weapon to ward off the handcuffed Cathey. He testified that the weapon was already fabricated when he was placed in Cathey's cell and that he was afraid he would be trapped in the cell with Cathey.

*Tamez v. State,* 205 S.W.3d 32, 35–37 (Tex. App.-Tyler 2006, no pet.).

After unsuccessfully seeking state habeas corpus review, Tamez filed the present federal habeas petition, which he later supplemented with additional claims. In his petition, Tamez contends that: (1) he received ineffective assistance of counsel in various particulars; (2) the trial court allowed him to be tried in leg irons and shackles in front of the jury; and (3) the trial court allowed a coerced confession to be used against him. The State has been ordered to answer the petition and has done so. Tamez did not file a response to the answer. His grounds for relief will be considered in turn.

## I. Ineffective Assistance of Counsel

This ground for relief contains several sub-parts. Specifically, Tamez argues that (a) counsel failed to investigate the fact that Tamez had suffered sexual abuse in childhood, a fact which is relevant because Cathey made "unprovoked, unwanted, aggressive homosexual attacks" and had threatened to sexually assault Tamez; (b) counsel failed to investigate the circumstances surrounding his placement in leg-irons during the guilt phase of the trial and failed to object to the use of these restraints; (c) trial counsel was made aware of the coercive means by which the confession was extracted and failed to investigate so that these claims could be brought to the attention of the trial court before the ruling on the admissibility of the confession; (d) counsel failed to present evidence showing that Tamez was actually the victim of the crime; (e) much of the evidence admitted against him was illegally obtained through coercion, but trial counsel allowed it in; (f) trial counsel showed a conflict of interest because she advised Tamez that she was not allowed to investigate her employers [1]; (g) counsel failed to challenge the petit jury; (h) counsel failed to file proper discovery requests and "argue proper remedies of law"; and (i) counsel failed to object to gang evidence in his confession and failed to argue "freedom of speech protection."

### General Standards for Ineffectiveness Claims

To prevail on a claim of ineffective assistance of counsel, a state prisoner seeking federal habeas corpus relief must show that his attorney's performance was deficient and that the deficiency prejudiced him to the point that he was denied a fair trial. *Strickland v. Washington,* 466 U.S. 668, 678, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This means that the habeas petitioner must establish both that (1) counsel's performance was deficient in that it fell below an objective standard of reasonable competence and (2) the deficient performance so prejudiced the defense that the outcome of the trial was unreliable and there is a reasonable probability that, but for counsel's performance, the result of the trial would have been different. Unless a petitioner makes both showings, he is not entitled to relief. *Lavernia v. Lynaugh,*

---

**1.** Tamez's trial attorney, Barbara Law, worked for the State Counsel for Offenders and was thus nominally a state employee.

845 F.2d 493, 498 (5th Cir.1988). The burden of proving ineffective assistance of counsel is on the petitioner. *Hayes v. Maggio,* 699 F.2d 198, 201 (5th Cir.1983).

In addition, the petitioner has the burden of identifying the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *Jones v. Butler,* 864 F.2d 348 (5th Cir.1988), *cert. denied* 490 U.S. 1075, 109 S.Ct. 2090, 104 L.Ed.2d 653 (1989). General statements and conclusory charges of ineffectiveness will not suffice. *Green v. McGougan,* 744 F.2d 1189, 1190 (5th Cir.1984).

### A. Failure to investigate claims of childhood sexual abuse

In his first claim for relief, Tamez says that his trial counsel

> made no independent investigation concerning facts of defendant's childhood sexual abuse, the unprovoked, unwanted, aggressive homosexual attacks perpetrated by the deceased prior to the altercation that caused the demise of William Cathey. After being informed of these facts, along with the fact that the defendant asked the Texas Department of Criminal Justice officers several times to intervene in his behalf to avoid any further complication in dealing with this somewhat larger aggressive homosexual, these requests were completely ignored by the staff, trial counsel stated that it was against policy to investigate her employers and open the door for possible liability. Instead of citing a conflict of interest, trial counsel refused to investigate the unspoken policy of making individuals such as the defendant fend for themselves against homosexual advances.

Adequate investigation is a requisite of effective assistance. *Gray v. Lucas,* 677 F.2d 1086, 1093 (5th Cir.1982).

To establish a constitutional violation, however, a defendant must show both a failure to investigate adequately and prejudice arising from that failure. *Gray,* 677 F.2d at 1093. A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. *U.S. v. Green,* 882 F.2d 999, 1003 (5th Cir.1989).

In this case, Tamez alleges that an investigation would have uncovered a history of childhood sexual abuse and "aggressive homosexual behavior" by Cathey, but nothing in the record confirms this assertion. The Fifth Circuit has held that "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsubstantiated by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle,* 694 F.2d 1008, 1011–12 and n. 2 (5th Cir. 1983); *see Koch v. Puckett,* 907 F.2d 524, 530 (5th Cir.1990). In this case, Tamez's contentions that he had a history of childhood sexual abuse and that Cathey "perpetrated aggressive homosexual acts" against him are unsupported and unsubstantiated in the record, and thus lack probative value. Tamez did testify that Cathey had threatened to rape and kill him, and so the evidence of these threats was before the jury, but the record contains no evidence of any actual attacks, nor any evidence of Tamez's childhood. Consequently, Tamez's claim on this point is without merit.

Furthermore, Tamez has not shown how this information, even if it existed and was discovered by counsel, would have altered the outcome of the trial. The evidence showed that Tamez was placed in Cathey's cell and waited quietly there until Officer Mickens returned with Cathey.

Once Mickens opened the door, Tamez rushed out and began swinging the sock containing the fan motor, striking Cathey numerous times and causing extensive injuries resulting in his death. Witnesses testified that Tamez chased Cathey, who was in handcuffs, down the hall. In his petition, Tamez simply speculates that "an independent expert or doctor could have testified to the substantial body of medical knowledge directly connecting post-traumatic symptoms of childhood sexual abuse which can have profound inhibiting effects upon the ability to think and act clearly and purposefully." This speculation is not sufficient to show that the information which Tamez believes should have been discovered, even assuming that it existed, would likely have altered the outcome of the trial. His claim on this point is without merit.

### B. Failure to investigate or object to placement in leg irons

In his federal petition, Tamez complains that counsel "failed to investigate the circumstances surrounding the use of leg irons during the guilt phase of the trial and allowed the defendant to be tried in shackles." He points to a U.S. Supreme Court case called *Deck v. Missouri,* 544 U.S. 622, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005), in which the Court held that the law prohibits allowing a defendant to appear before the jury in shackles unless there is a specific reason to do so. The Fifth Circuit has explained that a defendant is entitled to the physical indicia of innocence, but a court is justified in ordering him handcuffed and shackled during trial if there is a danger of escape or injury to the jury, counsel, or other trial participants.

The Respondent argues that there is no indication in the record that Tamez was actually handcuffed or shackled during trial. This is not entirely accurate. Immediately before Tamez testified, in court outside the presence of the jury, Law stated that Tamez had been in leg shackles, and that "the way he has been able to sit, he has been at the end of the counsel table." (Statement of Facts, vol. VI, p. 106). The trial judge stated that Tamez would be placed into the witness box before the jury came in, and that his hands would be left unshackled, indicating that care would be taken to ensure that the shackles would not be visible to the jury.

There is no indication in the record that the leg shackles placed upon Tamez were in fact visible to the jury from where he was sitting. In fact, the discussion prior to Tamez's testimony regarding the placing of Tamez in the jury box prior to the jury entering the courtroom strongly implies that the shackles were not visible to the jury. The trial judge clearly wanted to avoid having Tamez walk from where he was seated to the jury box while wearing the leg shackles; had these shackles been visible to the jury throughout the trial, there would be no reason for concern over having him walk to the witness stand. Tamez's bald assertions are unsupported and unsubstantiated by anything else in the record, and therefore lack probative evidentiary value.

In addition, the jury was aware that Tamez was a prisoner in the Texas Department of Criminal Justice, and that he had previous convictions for possession of a deadly weapon in a penal institution and burglary of a habitation. Even assuming that Tamez was shackled or in leg irons, it seems unlikely that the jury would have been surprised by this, much less prejudiced, and would reasonably have assumed that the shackles were due to Tamez's status as an inmate rather than his guilt or innocence in the present case. Based on a review of the evidence in this case, it is clear beyond a reasonable doubt that any error arising from Tamez's shackling, assuming that such shackling took place, did

not contribute to the jury's finding of guilt or assessment of a sentence of life in prison. *See Deck,* 125 S.Ct. at 2015–2016; *Hatten v. Quarterman,* no. C–02–20, 2007 WL 2818009 (S.D.Tex., Sept. 25, 2007) (unpublished) (available on Westlaw at 2007 WL 2818009). Tamez's claim on this point is without merit.

Similarly, Tamez's claim of ineffective assistance in this regard must fail. He has not shown that but for the failure to object, the result of the proceeding would probably have been different. The Fifth Circuit has held that where the evidence of guilt is overwhelming, a claim of ineffective assistance of counsel may fail even if the Court assumes that counsel was in fact ineffective. *Johnson v. Cockrell,* 301 F.3d 234, 239 (5th Cir.2002); *see also Moawad v. Anderson,* 143 F.3d 942, 948 (5th Cir. 1998). Such is the case here.

### C. Failure to investigate the circumstances of Tamez's confession

In his third ground for relief, Tamez contends that counsel failed to investigate the circumstances of his confession. He says that he was placed in an empty cell with no lights, no running water, no clothes, no sheets, no blankets, on a cold and rainy night, which caused his confession to be coerced, but that counsel failed to investigate this.

Nothing in the record supports Tamez's claims regarding the alleged coerciveness of his confession. The Court notes that in a grievance which Tamez filed complaining of the confession, he did not mention anything about cell conditions, but asserts that he was threatened in the course of the questioning. The trial court specifically found that his confession was voluntarily given, and this finding of fact is binding on this Court unless Tamez can show that it was based upon an unreasonable determination of the facts in light of the evidence presented in the state court

proceeding. He has wholly failed to do so, and so his claim on this point is without merit.

Nor has Tamez shown that he received ineffective assistance of counsel in this regard. In a letter to Tamez, Barbara Law says that the "circumstances which you describe in your descriptions of the interrogations" do not rise to the level of coercion; it is not clear if she is talking about allegations of cell conditions or allegations of threats, such as Tamez raised in his grievance. She also notes that the written statements which Tamez gave acknowledge that he received *Miranda* warnings and state that "I [Tamez] have not been promised anything, nor have I been forced or coerced in any way to give this statement and it is given voluntarily."

Nothing in the record supports Tamez's claims concerning the conditions of the cell in which he was placed. Consequently, these assertions lack probative evidentiary value. *Ross,* 694 F.2d at 1011–12 and n. 2. His claim that counsel was ineffective for failing to investigate lacks merit because he has failed to offer any probative evidence showing what the investigation would have revealed and how it would have altered the outcome of the trial. His claim on this point is without merit.

### D. Failure to present evidence that Tamez was the victim

In his original petition, under a heading labeled "Prejudice," Tamez states that there are several factors establishing prejudice from counsel's deficient performance, of which the first that he cites is that there was not evidence presented by counsel that Petitioner was actually the victim of the crime.

Tamez does not state what evidence he thinks that counsel should have presented which would have shown that he

was actually the victim. In his testimony, he told the jury that Cathey had threatened to rape him and kill him, that he, Tamez, had been placed in Cathey's cell without realizing it, that he found a weapon in the cell which Cathey had been making, and that when the cell door was opened, Tamez ran out and was swinging wildly in order to protect himself and to keep other people away from him, not with any intent to strike or harm Cathey. This was sufficient evidence, if believed, to allow the jury to find Tamez not guilty of murder, particularly with regard to the lack of intent. In the absence of any showing of what evidence Tamez believes that counsel should have offered, his claim on this point is without merit.

### E. Evidence obtained through coercion

Tamez says that "most of the evidence trial counsel allowed to be admitted against Petitioner was illegally obtained through coercion, and subversive [sic] tactics condemned by the Fifth Circuit and U.S. Supreme Court." He does not identify any such evidence, other than the confession, which has already been discussed above. The other evidence which was offered by the State included the testimony of other inmates living on the wing where the incident took place, the testimony of guards who came to the scene, and medical evidence. Tamez has not shown that any of this evidence was obtained through coercion or improper tactics. In the absence of any specific facts, Tamez's claim on this point is without merit.

### F. Not allowed to investigate her employers

Tamez says that Law made no independent investigation about the homosexual acts perpetrated by Cathey. He states that after Law was informed of these facts, as well as the fact that Tamez had asked TDCJ officials several times to intervene in his behalf to avoid complications in dealing with "this somewhat larger aggressive homosexual," which requests were ignored, Law told him that "it was against policy to investigate her employers and open the door for possible liability." He says that counsel refused to investigate "the unspoken policy of making individuals such as the defendant fend for themselves against homosexual advances."

This is in effect a claim that counsel had a conflict of interest between TDCJ, her nominal employer, and Tamez, her client. The Fifth Circuit has held that where a claim of ineffective assistance of counsel is based on an alleged conflict of interest, in order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. *Beets v. Collins*, 986 F.2d 1478, 1486 (5th Cir.1993); *Beathard v. Johnson*, 177 F.3d 340, 346 (5th Cir.1999). A theoretical or merely speculative conflict of interest will not invoke the protections of the Sixth Amendment; as a threshold matter, the defendant must demonstrate that the defense attorney was required to make a choice advancing his own interests to the detriment of his client's interests. *Beets*, 986 F.2d at 1486. To show adverse effect, a petitioner must demonstrate that some plausible defense strategy or tactic might have been pursued but was not, because of the conflict of interest. *Perillo v. Johnson*, 79 F.3d 441, 449 (5th Cir.1996).

In this case, Tamez has failed to show that an actual conflict of interest existed, much less that it caused counsel to forego some plausible defensive strategy. He offers nothing to support his contention that Law told him that she was prohibited from investigating TDCJ, or that he had sought protection from prison officials regarding Cathey. Nor does Tamez offer any evidence of "an unspoken policy" of letting

inmates "fend for themselves." As noted above, he testified to the jury about Cathey's threats to rape him and kill him. Tamez has failed to offer any specific facts showing what other evidence Law could have discovered through a different investigation, nor how such an investigation would have affected the outcome of the trial. *Gray v. Lucas,* 677 F.2d at 1093; *U.S. v. Green,* 882 F.2d 999, 1003 (5th Cir.1989). His claim on this point is without merit.

### G. Failure to challenge the petit jury

In his supplemental petition, Tamez says that counsel failed to challenge the assembled petit jury. He states that two members of the jury were TDCJ employees, and thus should have been removed for cause. Tamez specifically identifies a juror named Brett Huffman as a TDCJ employee, and says that there was one other as well.

■ Tamez offers nothing, other than letters which he himself wrote, to show that two jurors were TDCJ employees. Although he says that counsel told his family about the TDCJ employees, he offers no supporting statements from any family members, or from the jurors themselves, nor does he offer copies of the juror questionnaires. In the absence of any evidence in the record, Tamez's bare and conclusory assertions lack probative value. His claim on this point is without merit.[2]

### H. Failure to file proper discovery requests

■ In this ground for relief, Tamez says that counsel failed to seek discovery under "a new cause number" and failed to ask for a continuance, to request *Brady* material, and "real notice of the expert list." The holding in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215

(1963) requires the prosecution to disclose exculpatory evidence to the defense. The prosecutor has an independent duty to disclose such information, whether or not a *Brady* request was actually made. *U.S. v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *Lockhart v. McCotter,* 782 F.2d 1275, 1282 (5th Cir.1986).

■ The Fifth Circuit has held that to prevail on a *Brady* claim, a defendant must show (1) the prosecution suppressed evidence that was (2) favorable to the accused and (3) material to either guilt or punishment. *Drew v. Collins,* 964 F.2d 411, 419 (5th Cir.1992). In this case, Tamez says that critical evidence was lost, this being the shorts and shirt which he wore on the night in question. He says that had he punched Cathey in the face, as some of the State's witnesses testified, a "substantial amount of blood" would have gotten on him and on his clothing.

The Respondent argues that Tamez offers no evidence that his clothing and shoes did not contain blood, or that they were even still in existence at the time of trial. This is essentially correct; however, State's Exhibit no. 29, a photograph of Tamez, reveals no evident large bloodstains upon his white clothing. It cannot be determined whether or not his shoes contain bloodstains, as these are dark in the picture, which was taken from approximately ten to 15 feet away.

Despite this photograph, Tamez has not shown that his clothing was exculpatory to any material degree. His argument appears to be that some of the state's witnesses testified that after Tamez swung the sock and fan motor several times, he then turned Cathey over and punched him in the face. This testimony is inconsistent with Tamez's theory that he had simply

---

**2.** In addition, even if these jurors did work for TDCJ, Tamez has not shown that this fact alone would necessarily require their removal for cause.

swung the sock and fan motor around to keep people away from him. However, Tamez simply speculates that had the state's witnesses been correct, he would have garnered a substantial amount of blood on himself and on his clothes. Tamez's hands are not visible in the photograph, and so it cannot be determined if he had blood on his hands. The single black-and-white photograph in the record simply does not show that Tamez's clothing was exculpatory, and Tamez's speculation to that effect is insufficient to show a *Brady* violation. His claim on this point is without merit.

■ Next, Tamez complains that the counsel failed to seek "real notice of the expert witness list." According to the opinion of the Court of Appeals, the State designated every witness as a potential expert. The Court of Appeals noted that the trial court did not order the State to list its expert witnesses, and that Tamez had requested such an order under a previous cause number in which this matter had been indicted, but that this order did not carry over. In addition, the Court of Appeals observed that Tamez had not requested a continuance, which is the proper remedy for a discovery violation, that Tamez did not object to the expert testimony offered by prison investigator Bill Jones, Dr. Veasey, or Dr. Villereal. Tamez did object to expert testimony offered by Warden Eddie Baker, but the Court of Appeals held that his claim on this point was without merit, because Tamez should have reasonably anticipated that a prison warden would testify that a fan motor in a sock is a deadly weapon.

While it may well be that Law should have requested that the State list the expert witnesses it intended to call, and should have sought a continuance when this was not done, Tamez has failed to meet the second prong of the constitutional ineffectiveness test because he has not shown that but for counsel's alleged dereliction, the result of the proceeding would probably have been different. He says that a proper motion for continuance would have allowed counsel "proper time to thoroughly analyze the expert witnesses, and if need be ask the court for appointment of its own witnesses to counter-balance the State's case in chief." This vague and general contention fails to meet Tamez's burden of showing that counsel was constitutionally deficient; Tamez does not show what an analysis of the State's expert witnesses would have revealed, nor what testimony could have countered that of the State's experts. His claim on this point is without merit.

### I. *Failure to object to gang evidence and to argue "freedom of speech protection"*

In this claim, Tamez complains first that his confession referred to the "Mexican Mafia," which was irrelevant to any of the issues being tried. He says that counsel should have had it redacted from the confession, or asked for a limiting instruction asking that the jury not believe or assume that there was an underlying motive which the State had not proven.

■ In his confession, Tamez said that he began having problems with Cathey because Cathey began putting out information that Tamez was a member of the Mexican Mafia, which was heard by the Mexican Mafia members. Tamez explained that Cathey did this in order to "cause confusion between me and that *familia.*" As the Court of Appeals observed, this confession does not say that Tamez was a member of a gang; on the contrary, it indicates that he was not a member and that Cathey was falsely saying that he was. At a pre-trial hearing, Law stated that she was not necessarily asking that the statement be redacted, but

that she was concerned that it might open the door to evidence about Tamez's actual membership in a different gang, the Latin Kings. The trial court stated that this would not open the door.

Although Tamez argues that the statement was "irrelevant and inflammatory," he has not shown that but for counsel's failure to object, the result of the proceeding would probably have been different. The Respondent argues that allowing the gang reference into evidence was part of a sound trial strategy of arguing that Tamez was trying to defend himself from Cathey. The gang reference in the confession shows that Cathey was trying to get Tamez in trouble with a violent prison gang, the Mexican Mafia, by falsely spreading rumors that Tamez was a member of that gang when he was not. As Tamez concedes, investigator Bill Jones testified that the incident was not gang-related. (Statement of Facts, vol. 4, p. 132). Tamez has failed to show that he received ineffective assistance of counsel in this regard and so his claim on this point is without merit.

Tamez also complains about evidence of gang membership during the punishment phase of the trial, saying that counsel "failed to argue freedom of speech protection." Sgt. Lucian Castro, a gang intelligence officer, testified that Tamez denied being a member of the Mexican Mafia, but that he did admit to being a member of the Latin Kings, another prison gang. Law objected to this testimony and secured a running objection from the trial court regarding it. (Statement of Facts, vol. VII, p. 26).

To the extent that Tamez argues that he received ineffective assistance of counsel, he appears to be claiming that Law did not object based upon freedom of speech and association. In *Dawson v. Delaware*, 503 U.S. 159, 165, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992), the Supreme Court held that it was unconstitutional to consider a defendant's membership in a racist gang, the Aryan Brotherhood, where that issue was not relevant to the crime or to any issue being decided in the punishment proceeding. Significantly, the prosecution in *Dawson* proved that the defendant was a member of the Aryan Brotherhood in Delaware, and described the Aryan Brotherhood as a "white racist prison gang that began in the 1960s in California," but offered no further evidence about the Aryan Brotherhood in Delaware. The prosecutor did not link the beliefs of the gang in California to that in Delaware or provide any information about the beliefs of the gang other than the fact that the California gang held racist beliefs, nor did the prosecutor offer any evidence that the Aryan Brotherhood was involved in criminal activity.

Under Texas law, to prove the relevance of a defendant's membership in an organization or group, the State must show (1) proof of the group's violent and illegal activities and (2) the defendant's membership in the organization. *Mason v. State*, 905 S.W.2d 570, 577 (Tex.Crim.App.1995). These factors satisfy the concerns addressed by the Supreme Court in *Dawson*. In this case, Sgt, Castro testified that Tamez admitted membership in the Latin Kings, and that the activities of the Latin Kings included homicides, extortion, and drug trafficking. These facts are sufficient to meet the State's burden of proof. *Mason*, 905 S.W.2d at 577; *Beasley v. State*, 902 S.W.2d 452, 456–57 (Tex.Crim. App.1995). Tamez has failed to show trial-court error in the admission of the evidence. His claim on this point is without merit. *See also Aguilar v. State*, 29 S.W.3d 268, 270 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

## II. Trial in Leg Shackles

This point has been discussed above, in connection with ineffective assistance of

counsel. Tamez failed to point to any evidence in the record that the jury was able to view his leg shackles, and his bald assertion lacks probative evidentiary value. *Ross,* 694 F.2d at 1011–12 and n. 2. Nor has he shown that he suffered any prejudice as a result; as stated above, the jurors knew that Tamez was already incarcerated for other offenses, and thus would have reasonably assumed that the leg shackling was not related to his guilt or innocence in the case for which he was currently on trial. In addition, Tamez has failed to show prejudice because the evidence of his guilt was overwhelming. His claim on this point is without merit.

### III. Use of a Coerced Confession

This claim has also been discussed in connection with Tamez's assertion that he received ineffective assistance of counsel. He says that he was placed into an empty cell with no lights, no running water, no clothes, and no sheets or blankets on a cold and rainy night. However, Tamez points to no evidence in the record to support any of these claims. Even when he testified, Tamez made no mention of coercion through cell conditions; instead, he said that Officer Jones had "threatened" him. Specifically, Tamez said that Jones told him that "Tamez, we know you're coming up for classification. We can let you out." According to Tamez, the phrase "we can let you out" was an implied threat to move him to another part of the unit, where there were other black inmates who knew Cathey, who would want to harm him.

This testimony does not match up with the allegation of coercion made in the complaint, which was based on cell conditions. Nor has Tamez shown that the statement "we can let you out" caused his will to be so overborne as to render his confession the product of coercion. *See Arizona v. Fulminante,* 499 U.S. 279, 288, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

Furthermore, the Supreme Court observed that admission of a coerced confession was subject to the harmless-error rule. *Fulminante,* 499 U.S. at 308–10, 111 S.Ct. 1246. In this case, Tamez testified at trial and stated that he was placed in Cathey's cell, where he found the sock with the motor in it on the bunk. When the door opened, he said, he grabbed it and began swinging it as he came out of the cell. Cathey began backing away and tried to run, and Tamez followed him for "five or six steps." Tamez stated that he was swinging the sock to "keep people away from him" and denied any intent to cause bodily injury, but that he hit Cathey approximately three to five times with it. Cathey fell and cursed at Tamez, who then hit him some more. When the officers arrived, Tamez said that he threw down the weapon and laid on the floor. (Statement of Facts, Vol. VI, pp. 125–28). This testimony was sufficient, even without either of the written statements made by Tamez, to support a finding of guilt. Hence, the admission of the written statements, even if error, was harmless. Tamez's claim on this point is without merit.

### Conclusion

28 U.S.C. § 2254(d) provides that in order to be granted a writ of habeas corpus in federal court, a petitioner must show that the state court's adjudication of his claim resulted in a decision which was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See Moore v. Cockrell,* 313 F.3d at 881. Tamez has failed to make such a showing.

The Court has carefully examined the grounds for habeas corpus relief presented

by the Petitioner Raul Garza Tamez, as well as the answer filed by the Respondent, the state court records, and all pleadings and documents in the record. Upon such examination, the Court has concluded that the Petitioner Raul Garza Tamez has failed to show that he is entitled to the issuance of a writ of habeas corpus or to the relief sought in his application for such writ. Absent a showing that the petitioner is in custody in violation of the Constitution, laws, or treaties of the United States, the relief sought cannot be granted. 28 U.S.C. § 2241(c)(3).

## *RECOMMENDATION*

It is accordingly recommended that the petitioner's application for the writ of habeas corpus be dismissed with prejudice.

A party's failure to file objections to the findings, conclusions, and recommendations contained in this Report within ten days after service with a copy thereof shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except upon grounds of plain error, from appellate review of the unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1430 (5th Cir.1996) (*en banc* ).

Apr. 4, 2008.